```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION
```

METROPOLITAN LIFE INSURANCE
COMPANY,

        Plaintiff,

v.     Case No: 2:20-cv-276-JES-MRM

FRED A. LIEBOWITZ,

        Defendant.

---

## OPINION AND ORDER

This matter comes before the Court on review of plaintiff Metropolitan Life Insurance Company's Motion to Strike Testimony of William Tharpe, Esq. (Doc. #82) filed on July 21, 2021. Defendant Fred A. Liebowitz filed a Response (Doc. #88) on August 23, 2021. For the reasons set forth below, the motion is granted.

### I.

The Court previously described the factual and procedural history of this case as follows:

> Plaintiff Metropolitan Life Insurance Company (plaintiff or MetLife) initiated this matter by filing a one-count Complaint against defendant Fred A. Liebowitz (defendant or Dr. Liebowitz). (Doc. #1.) The Complaint alleges that Dr. Liebowitz is a pain management physician who filed an application with MetLife for a disability insurance policy in January 2015. (Id. ¶ 5.) MetLife approved Dr. Liebowitz for coverage and issued him a disability policy (the Policy). (Id. ¶ 6.)

The Complaint alleges that in December 2018 Dr. Liebowitz submitted a claim under the Policy for an ankle injury. (Id. ¶ 15.) During its investigation of this claim, MetLife discovered what it believes to be false information or omissions in the application filed by Dr. Liebowitz regarding his financial, occupational, and professional status. (Id. ¶¶ 10-12, 15.) Specifically, the Complaint alleges Dr. Liebowitz failed to advise MetLife that he was the subject of multiple Florida Department of Health (DOH) investigations for improperly prescribing narcotics to patients. (Id. ¶ 12.) These investigations would subsequently lead to the DOH issuing a reprimand against Dr. Liebowitz's license, imposing a fine and costs, and restricting Dr. Liebowitz from prescribing controlled substances. (Id. ¶ 14.)

In response to learning these facts, MetLife returned all premiums paid by Dr. Liebowitz with respect to the Policy, with interest. (Id. ¶ 22.) Dr. Liebowitz rejected the tendered refund. (Id.)

The Complaint seeks "rescission of the Policy pursuant to Fla. Stat. § 627.409 and Florida law." (Id. ¶ 9.) According to the Complaint, MetLife (1) justifiably relied on Dr. Liebowitz's fraudulent misrepresentations and omission of material facts in the application, and (2) would not have issued the Policy had it known the true facts. (Id. ¶¶ 17, 18.) The Complaint asserts the Policy "is *void ab initio* under Florida common law and pursuant to Fla. Stat. § 627.409." (Id. ¶ 19.) Federal jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332. (Id. ¶ 1.)

Dr. Liebowitz filed a Second Amended Answer, Affirmative Defenses and Counterclaim. (Doc. #32.) Dr. Liebowitz's two-count Counterclaim seeks declaratory relief as to whether, among other things, MetLife had the right to unilaterally rescind the Policy and whether MetLife must honor the Policy by payment of disability benefits. (Id. ¶¶ 1, 27.) Dr. Liebowitz seeks a declaration that "the disability policy issued to [him]

>by MetLife to be in full force and effect."  (Id. at ¶ 27.)[1]

(Doc. #54, pp. 1-3 (footnote omitted)).

In February 2021, the parties filed a joint motion to bifurcate the discovery and trial in this case into two phases. (Doc. #43.)  The first phase would determine whether the disability policy exists, i.e., the "coverage" issue, and the second phase would determine what residual benefits were due to Dr. Liebowitz if coverage existed, i.e., the "damages" issue.  (Id. pp. 1-2.) The parties agreed that "the Court is to resolve the coverage issue without a jury if bifurcation is granted."  (Id. p. 10.)  The Court granted the motion and bifurcated the matter.  (Doc. #44.) Accordingly, the coverage issue will be decided by the Court without a jury.

Now at the summary judgment stage, MetLife has filed the instant motion seeking to strike Dr. Liebowitz's expert witness, William Tharpe.  (Doc. #82.)  To understand the motion, some background is necessary.  When Dr. Liebowitz applied for the disability policy, he answered various questions regarding his occupational status and financial stability.  (Doc. #72-2, pp. 237, 241.)  One such question was as follows:

---

[1] Dr. Liebowitz has since filed a Third Amended Answer, Affirmative Defenses, and Counterclaim (Doc. #58), but the differences between second and third versions are negligible.

> 17. Have you EVER had a professional license suspended, revoked, or is such license under review or have you ever been disbarred? If **YES**, give details below.

(Id. p. 241.) At the time of the application, Dr. Liebowitz had apparently been named a respondent to several administrative complaints filed against him by the Florida Department of Health alleging various statutory violations. (Doc. #74-3, p. 102.) Despite this, Dr. Liebowitz answered "No" to the above question. (Doc. #72-2, p. 241.) MetLife asserts this answer constitutes a fraudulent misrepresentation and grounds for rescission of the policy. (Doc. #1, pp. 2-5.) Dr. Liebowitz has denied making any misrepresentation (Doc. #58, ¶ 12), and in support has offered the opinion of Tharpe.

Tharpe is a former employee of the Florida Department of Financial Services who "probably oversaw more than a thousand administrative proceedings" brought against a licensee in his twenty-year employment. (Doc. #74-3, pp. 99, 100.) Based on his experience as an administrative lawyer and knowledge of the relevant statutes, Tharpe offers two opinions relevant to this motion. First, Tharpe opines that the question of whether an insurance applicant's professional license is "under review" is inherently ambiguous because there is nothing in the relevant Florida statutes to define this term. (Id. p. 104.) Second, Tharpe asserts that "the most reasonable interpretation for question 17 above is that a professional license is only under

4

review . . . when a Recommended Order has been submitted to an agency head pertaining to the possible discipline of the professional license holder." (Id. p. 105.)  If the administrative proceeding against Dr. Liebowitz had not progressed to the point that a recommended order was before the agency head to review for entry of a final order, Tharpe "can find no fault with the negative answer Dr. Liebowitz gave to application question 17."  (Id. p. 110.)  MetLife's motion seeks to preclude Tharpe from testifying as to these opinions pursuant to Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  (Doc. #82.)

**II.**

The admission of expert testimony is governed by Rule 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 contemplates that the district court serve as gatekeeper for the admission of scientific testimony in order to ensure that any and all expert testimony is both relevant and reliable. Daubert, 509 U.S. at 589; Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1183 (11th Cir. 2013). "The Supreme Court did not intend, however, that the gatekeeper role supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004) (marks and citations omitted).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). Expert testimony is admissible if (1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently reliable, and (3) the testimony will assist the trier of fact. Arthrex, Inc., v. Parcus Med., LLC, 2014 WL 3747598, *1 (M.D. Fla. July 29, 2014) (citing Tampa Bay Water, 731 F.3d at 1183). The burden of laying the proper foundation for the admission of expert testimony "is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." Kilpatrick v. Breg, Inc., 613

F.3d 1329, 1335 (11th Cir. 2010) (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)). The admission of expert testimony is a matter within the discretion of the district court, which is accorded considerable leeway in making its determination. Frazier, 387 F.3d at 1258.

As an initial matter, the Court notes that Tharpe's opinion is relevant to the issue of coverage, which is to be determined by bench trial. (Doc. #43; Doc. #44.) "When a matter is set for a bench trial . . . the Eleventh Circuit has commented that '[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.'" Apple Glen Invs., L.P. v. Express Scripts, Inc., 2015 WL 3721100, *2 (M.D. Fla. June 15, 2015) (quoting United States v. Brown, 415 F.3d 1257, 1269 (11th Cir. 2005)). In fact, "[w]here a trial judge conducts a bench trial, the judge need not conduct a Daubert (or Rule 702) analysis before presentation of the evidence," although the judge "must determine admissibility at some point." Adams v. Paradise Cruise Line Operator Ltd., Inc., 2020 WL 3489366, *3 (S.D. Fla. June 26, 2020) (citation omitted); see also N.W.B. Imports & Exports Inc. v. Eiras, 2005 WL 5960920, *1 (M.D. Fla. Mar. 22, 2005) ("Because this is a non-jury trial, the gatekeeping purpose of Daubert is not implicated. The Court will therefore receive [the] testimony, make a final admissibility decision and, if admissible, accord it the weight, if any, it deserves." (footnotes

omitted)). Nonetheless, "courts may still go through the individual analyses of the experts or motions, and have granted these motions to strike prior to the bench trial." Adams, 2020 WL 3489366, *3 (citations omitted).

### III.

As previously noted, expert testimony is admissible if (1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently reliable, and (3) the testimony will assist the trier of fact. Arthrex, 2014 WL 3747598, *1. While MetLife asserts generally that Tharpe's testimony fails to meet all three requirements, its argument focuses predominately on the first and third tests. (Doc. #82, pp. 6-12.) Specifically, MetLife argues (1) Tharpe's lack of specialized knowledge and experience with Florida Department of Health or Board of Medicine procedures makes him unqualified to opine about medical licensing issues in this action, and (2) such testimony would be irrelevant, improper, and will not assist the trier of fact regardless because Tharpe seeks to offer an opinion as to how to interpret a contract. (Id. pp. 6-11.) Because the Court agrees with the latter argument, it will grant the motion to strike without addressing the former.

Dr. Liebowitz is offering Tharpe's opinions as to how the term "under review" in the application should be interpreted. However, under Florida law, "the interpretation of insurance

8

contract provisions, including resolving ambiguities in the contract, is a matter of law to be decided by the court." RSUI Indem. Co. v. Benderson Dev. Co., 2011 WL 32318, *3 (M.D. Fla. Jan. 5, 2011) (citations omitted).[2] To the extent Tharpe is opining that Dr. Liebowitz did not make a fraudulent representation in the application based on the "most reasonable" interpretation of "under review," such an opinion would constitute an improper legal conclusion. See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) (noting "testifying experts may not offer legal conclusions"). Accordingly, the Court finds the opinion will not be helpful and therefore is inadmissible.

Dr. Liebowitz asserts Tharpe should be permitted to offer his opinions because "under review" is ambiguous. (Doc. #88, p. 6.) However, an ambiguity does not necessarily exist simply because a term is undefined. See RSUI, 2011 WL 32318, *3 ("The lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts." (citations omitted)). Dr. Liebowitz also argues Tharpe's testimony can give trade usage context to the term "under review," and that he can testify "about the meaning of terms of art within

---

[2] While the issue before the Court is interpretation of a term in an application for insurance, the Court finds the principles involving contract interpretation applicable.

the 'industry' of professional disciplinary administrative proceedings." (Doc. #88, pp. 6-7.) The Court finds neither of these assertions convincing.

While expert testimony to interpret contract language may be admissible when there is a need to clarify or define terms of art, science, or trade, TCP Indus., Inc. v. Uniroyal, Inc., 661 F.2d 542, 549 (6th Cir. 1981), Tharpe has specifically stated in his affidavit that "[i]n [his] more than twenty-years' involvement in administrative disciplinary hearings, [he] cannot recall anyone ever remarking that the professional license of the licensee was 'under review' or 'being reviewed.'" (Doc. #74-3, pp. 109-110). Accordingly, Tharpe's proposed interpretation of "under review" is not based on trade usage, since the term is apparently not used in the administrative discipline industry. See Sparton Corp. v. United States, 77 Fed. Cl. 1, 8 (Fed. Cl. 2007) ("In the absence of specialized trade usage, expert testimony regarding proper contract interpretation is inadmissible, as is expert testimony regarding the legal significance of the contract language.")

Having reviewed the proposed opinions and relevant case law, the Court finds Tharpe's testimony does not meet the requirements of admissibility under Rule 702 and Daubert because it will not be helpful to the Court as factfinder. To the extent Dr. Liebowitz wishes to persuade the Court as to how to interpret the phrase "under review," his attorney is free to make such an argument.

10

However, Tharpe's testimony and opinions on this issue will not be admitted.

Accordingly, it is now

**ORDERED:**

Plaintiff's Motion to Strike Testimony of William Tharpe, Esq. (Doc. #82) is **GRANTED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __17th__ day of September, 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record