UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

METROPOLITAN LIFE INSURANCE
COMPANY,

        Plaintiff,

v.                              Case No:  2:20-cv-276-JES-MRM

FRED A. LIEBOWITZ,

        Defendant.

_____

## OPINION AND ORDER

This case comes before the Court on the parties' cross motions for summary judgment (Docs. ## 78, 80) filed on July 21, 2021. Each party filed Responses in opposition (Docs. ## 89, 90), and Replies. (Docs. ## 91, 93.)  As discussed below, the motions concern only issues relating to whether coverage exists under a certain insurance policy.  For the reasons set forth, defendant's motion for summary judgment is **DENIED** and plaintiff's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

**I.**

The record establishes the following undisputed facts.[1]

_____

[1] "Both parties contend that the facts are essentially undisputed." (Doc. #97, p. 11.)  The Court, therefore, generally cites to the "Statement of Undisputed Issues of Fact" portion of the Joint Pretrial Statement (Doc. #97, pp. 6-11), supplemented as needed by compiled statements of the parties (Docs. #78, 80) and exhibits in the record.  MetLife's embedded motion to strike (Doc.

 
## A.   DOH Complaints and Investigations

Dr. Fred A. Liebowitz (plaintiff or Dr. Liebowitz) is a pain management physician in the Fort Myers, Florida area. (Doc. #97, ¶ 9(1)).  At all relevant times, his primary source of income was treating patients for pain and prescribing narcotics.  (Id. ¶ 9(3).)

By a letter dated May 10, 2010, Dr. Liebowitz was notified that the Florida Department of Health (DOH) was conducting an investigation of a complaint filed against him.  (Id. ¶ 9(10).) Ultimately, in 2010 and 2011 the DOH filed and served Dr. Liebowitz with three separate Administrative Complaints (the "DOH Complaints") in connection with medical care he had provided.  (Id. ¶ 9(11.)  The DOH Complaints alleged that on many occasions Dr. Liebowitz improperly prescribed pain killers to patients, including one incident where a patient subsequently died from drug overdose.  (Doc. #80, ¶ 11.)  The DOH Complaints requested that the Board of Medicine impose penalties on Dr. Liebowitz, including revocation or suspension of his medical license, restrictions on his medical practice, fines, reprimands, probation, corrective action, and remedial education.  (Id. ¶ 12.)  When Dr. Liebowitz

---

#90, p. 1, fn.1.) is denied, and the Court declines MetLife's request to deem the motion "largely unopposed."  (Doc. #93, p. 2.)

was served with the DOH Complaints he signed a form disputing the facts and requesting a formal hearing.  (Doc. #78, ¶ 7.)

Dr. Liebowitz notified his malpractice insurance carrier of the DOH Complaints and was represented by William Whitney (Mr. Whitney), an attorney provided by this insurance carrier, throughout the DOH administrative process.  (Doc. #97, ¶ 12.)  Mr. Whitney kept Dr. Liebowitz apprised of significant developments in the DOH proceedings.  (Doc. #80, ¶¶ 14-16; Doc. #97, ¶ 13.) Dr. Liebowitz was an active participant with counsel and stayed current on matters related to the DOH Complaints because the proceedings were important to his medical practice and reputation.  (Doc. #80, ¶¶ 15-16, 20.)

In July 2014, the DOH provided Dr. Liebowitz with a proposed settlement offer which Dr. Liebowitz and Mr. Whitney discussed in detail.  (Id. ¶¶ 21-22.)  Around September 2014, Dr. Liebowitz hired a second attorney (Allan Grossman) with his own funds to provide a second review of his case and to evaluate the settlement offer.  (Id. ¶¶ 25-28.)  The proposed settlement agreement included permanent restrictions that would indefinitely prevent Dr. Liebowitz from practicing his specialty of pain management and prescribing narcotics.  (Id. ¶ 23.)  The DOH offer was not accepted by Dr. Liebowitz.

**B.    Insurance Application and Policy Issuance**

On or about January 30, 2015, Dr. Liebowitz completed an application for a disability insurance policy with Metropolitan Life Insurance Company (defendant or MetLife) (the "Application"). (Doc. #97, ¶ 9(1).)  Dr. Liebowitz answered certain questions in the Application "to the best of [his] knowledge and belief," including the following two questions and answers pertinent to the current litigation:

> Question 5(i): Are you aware of any fact that could change your occupational status or financial stability? If YES, please give details below.
>
> Answer: No [box checked].
>
> ***
>
> Question 17: Have you EVER had a professional license suspended, revoked, or is such license under review or have you ever been disbarred? If YES, give details below.
>
> Answer: No [box checked].

(Id. ¶ 9(5).)  Dr. Liebowitz admits he did not disclose the pending DOH Complaints and investigations in the Application.  (Doc. #89, p. 2.)  MetLife made no investigation to determine the accuracy of the statements, but relied solely on the answers.  (Doc. #97, ¶ 9(8).)  MetLife subsequently approved Dr. Liebowitz for coverage based on the answers in his Application.  (Doc. #80, ¶ 4.)

MetLife processed Dr. Liebowitz's Application and issued a disability policy (the Policy) between April 16, 2015 and May 3,

2015. (Doc. #97, ¶ 9(4).)  On May 3, 2015, the Policy was delivered to Dr. Liebowitz, who signed an Amendment to the Application which affirmed that "there [were] no facts or circumstances which would require a change in the answers in the application." (Id. ¶ 9(7).) The Policy had an effective date of March 6, 2015.  (Id. ¶ 9(4).)

### C.   Resolution of the DOH Complaints

In 2018, the DOH amended the DOH Complaints, reducing the scope of the allegations.  (Doc. #80, ¶ 32.)  On September 11, 2018, Dr. Liebowitz entered into a settlement agreement with the DOH.  (Doc. #97, ¶ 9(15).)  A Final Order approving the settlement was entered by the Board of Medicine on December 18, 2018.  (Id.) Among other things, the Final Order issued a Reprimand against Dr. Liebowitz's medical license and restricted his ability to prescribe any controlled substance.  (Doc. #80, ¶ 39.)

### D.   Dr. Liebowitz's Insurance Claim and MetLife Rescission

Also on December 18, 2018, Dr. Liebowitz submitted initial claims forms to MetLife for disability benefits, stating his work had been limited since January 4, 2016 due to an ankle injury. (Doc. #80, ¶ 43 (citing Doc. #72-2, pp. 202-03).)[2]  MetLife spent about a year investigating Dr. Liebowitz's disability benefits

---

[2] Dr. Liebowitz more recently asserts that his disability commenced in July 2017 (Doc. #78, pp. 9, 16), and "disavows he was disabled within 2 years of the policy's issue or effective date." (Id. p. 15.)  Whether Dr. Liebowitz's disability commenced in January 2016 or July 2017 is immaterial to the coverage issue.

claim, which included review of his Application.  (Id. ¶¶ 44, 52.)
Following its investigation, MetLife sent Dr. Liebowitz, through
counsel, a Notice of Rescission dated December 30, 2019.  (Doc.
#97, ¶ 9(21).)   The Notice set forth the alleged material
misrepresentations made in his Application which were the basis
for rescission, and included a check representing premiums paid by
Dr. Liebowitz to date and interest.  (Id.)  Dr. Liebowitz disputed
MetLife's rescission and did not cash the check.  (Id. ¶ 21-22.)

   **E.   Present Litigation**

   On April 15, 2020, MetLife filed a Complaint seeking a Court
order "rescinding the Policy, and declaring that Liebowitz has no
right, title, or interest in the Policy."  (Doc. #1, Prayer for
Relief.)   Dr. Liebowitz, in turn, filed two interconnected
counterclaims against MetLife seeking reinstatement of the Policy
and disability benefits under the Policy.  (Doc. #58.)

   With the approval of the Court (Docs. ## 43-44), discovery
and trial have been bifurcated into two phases.  The first phase
will determine the "coverage" issue, with a bench trial if
necessary.  (Doc. #44.)  If there is coverage, a second phase will
determine what benefits are due to Dr. Liebowitz, i.e., the
"damages" issue, with a jury trial if necessary.  (Id.)  The cross-
motions for summary judgment at issue in this Opinion and Order
concern the coverage issue, only.  (Docs. ## 78, 80.)

## II.

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198

F.3d 815, 819 (11th Cir. 1999) (quoting <u>Warrior Tombigbee Transp.</u>
<u>Co. v. M/V Nan Fung</u>, 695 F.2d 1294, 1296-97 (11th Cir. 1983))
(finding summary judgment "may be inappropriate even where the
parties agree on the basic facts, but disagree about the factual
inferences that should be drawn from these facts.")).

Cross motions for summary judgment do not change the standard.
<u>See</u> <u>Am. Bankers Ins. Grp. v. United States</u>, 408 F.3d 1328, 1331
(11th Cir. 2005). Cross motions for summary judgment are to be
treated separately; the denial of one does not require the grant
of another; and summary judgment is inappropriate if disputes
remain as to material facts. <u>Id.</u>; <u>United States v. Oakley</u>, 744
F.2d 1553, 1555 (11th Cir. 1984). The treatment of cross motions
remains the same even when a case is set for a bench trial, except
in limited circumstances where the parties, in effect, submit an
agreed-upon statement of facts for a trial based on the written
record. <u>Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ.,</u>
<u>Inc.</u>, 830 F.3d 1242, 1253 (11th Cir. 2016) (quotation omitted).

### III.

Florida law allows an insurance policy to be rescinded under
certain circumstances. MetLife must adequately plead and
ultimately prove six elements to establish a cause of action for
rescission of its insurance contract:

> (1) [t]he character or relationship of the
> parties; (2) [t]he making of the contract; (3)
> [t]he existence of fraud, mutual mistake,

false representations, impossibility of performance, or other ground for rescission or cancellation; (4) [t]hat the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) [i]f the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; [and] (6) [l]astly, that the moving party has no adequate remedy at law.

Billian v. Mobil Corp., 710 So.2d 984, 991 (Fla. 4th DCA 1998).

In short, "Florida law ... gives an insurer the unilateral right to rescind its insurance policy on the basis of misrepresentation in the application of insurance." Moustafa v. Omega Ins. Co., 201 So. 3d 710, 714 (Fla. 4th DCA 2016) (citation omitted).

To rescind the Policy based on a misrepresentation, MetLife relies upon Fla. Stat. § 627.409(1), which provides:

(1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty. Except as provided in subsection (3), a misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:

(a) The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.

(b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium

> rate, would not have issued a policy or
> contract in as large an amount, or would not
> have provided coverage with respect to the
> hazard resulting in the loss.

Under this statute, "misrepresentations, omissions, concealment of

facts, and incorrect statements on an insurance application will

not prevent a recovery under the policy unless they are either:

(1) fraudulent; (2) material to the risk being assumed; or (3) the

insurer in good faith either would not have issued the policy or

would have done so only on different terms had the insurer known

the true facts."   Certain Underwriters at Lloyd's London v.

Jimenez, 197 So. 3d 597, 601 (Fla. 3d DCA 2016).

MetLife only relies upon the first portion of § 627.409(1)(a),

asserting that Dr. Liebowitz's answers to the two questions in the

Application were "fraudulent" misrepresentations or statements.

(Doc. #80, pp. 18-19.)[3]  MetLife cites to the four elements of

fraudulent misrepresentation set forth in Butler v. Yusem, 44 So.

3d 102, 105 (Fla. 2010): "As we have stated, there are four

elements of fraudulent misrepresentation: '(1) a false statement

---

[3] The Policy contains a "Time Limit on Certain Defenses"
provision, which provides: "After two years from the Effective
Date of this policy, or any policy change or reinstatement, no
misstatement, except fraudulent misstatements, made by You on the
Application can be used to void this policy or such policy change
or reinstatement, or to deny a claim under this policy or the
policy change or reinstatement, for a Disability starting after
the end of such two-year period." (Doc. #58-1, p. 13.)  The other
alternatives in the statute are admittedly time-barred by the two-
year provision.  (Doc. #80, pp. 17-19.)

concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" (citation omitted). (Doc. #80, p. 19). Dr. Liebowitz relies upon an earlier Florida Supreme Court case, Lance v. Wade, 457 So. 2d 1008 (Fla. 1984), setting forth the same four elements. (Doc. #89, p. 3.) Because proof of such fraud is difficult, "actual fraud is not the most common circumstance under which insurers avoid paying claims under insurance policies." Mora v. Tower Hill Prime Ins. Co., 155 So. 3d 1224, 1227 (Fla. 2d DCA 2015).

**IV.**

The parties' summary judgment motions address coverage issues only and whether MetLife may rescind the Policy under Florida law, supra. MetLife asserts that it was and is entitled to rescind the Policy based on Dr. Liebowitz's fraudulent misrepresentations, and therefore it is entitled to a judgment rescinding the Policy and precluding coverage for Dr. Liebowitz's disability claim. (Docs. ## 80, 90, 93.) Dr. Liebowitz, on the other hand, asserts that for various reasons MetLife did not properly rescind the Policy and cannot do so, and therefore he is entitled to coverage under the Policy. (Docs. ## 78, 89, 91.)

**A.    Proof of Fraud**

As discussed, one of the elements of MetLife's rescission claim requires that MetLife prove fraud by Dr. Liebowitz. MetLife's motion for summary judgment is primarily focused on this issue. (Doc. #80.)  Thus, the Court examines whether MetLife has satisfied the four fraud elements with the undisputed facts.

**(1)  False Statement Concerning Material Fact**

MetLife must establish that "a false statement concerning a material fact" was made by Dr. Liebowitz.  Butler, 44 So. 3d at 105.  Such a false statement of fact must be about a past or existing fact, not a prediction of a future event.  Bailey v. Covington, 317 So. 3d 1223, 1228 (Fla. 3d DCA 2021).  Whether a statement is material is measured by an objective standard.  "The test of materiality is not that the company was influenced but that the facts, if truly stated, might reasonably have influenced the company in deciding whether it should reject or accept the risk."  Singer v. Nationwide Mut. Fire Ins. Co., 512 So. 2d 1125, 1128 (Fla. 4th DCA 1987) (citation omitted).  A "truthful response to a question based on his 'knowledge and belief' cannot be considered a misstatement or misrepresentation in an insurance policy rescission action."  William Penn Life Ins. Co. of New York v. Sands, 912 F.2d 1359, 1360 (11th Cir. 1990).

Dr. Liebowitz argues that he did not make any false statements about material facts because the Application questions are

ambiguous, call for a prediction and not a fact, and he answered the ambiguous questions to the best of his knowledge and belief. (Doc. #78, pp. 18-25; Doc. #89, p. 4.)   Thus, the statements he made in response to the Application questions cannot be the basis of MetLife's proof of fraud, and he is entitled to summary judgment.  (Doc. #78, pp. 17-25.)[4]   The Court disagrees, and for the reasons set for the below, the answers to the two questions in Dr. Liebowitz's Application were both false and material as a matter of law.  Singer, 512 So. 2d at 1127.

It is certainly correct that an insurer may not deny coverage "if the alleged misrepresentation was in response to an ambiguous question. A question is ambiguous when it is susceptible to two reasonable interpretations, one in which a negative response would be correct and one in which an affirmative response would be correct." Mora, 155 So. 3d at 1228 (quoting Mercury Ins. Co. v. Markham, 36 So. 3d 730, 733 (Fla. 1st DCA 2010)). The inquiry is whether an objectively reasonable person, in the applicant's situation, "could truthfully answer the question in either the affirmative or the negative." Id.   Whether a question in an insurance application is ambiguous is question of law. Jimenez, 197 So. 3d at 600.

---

[4] Dr. Liebowitz asserts this same position as part of his Second and Third Affirmative Defenses, discussed infra.  (Doc. #58, pp. 5-7.)

13

(a)  **Question 5(i).**

Question 5(i) asked, "Are you aware of any fact that could change your occupational status or financial stability?" (Doc. #58-1, p. 18.) Dr. Liebowitz answered, "No." (Id.) Dr. Liebowitz contends the question is ambiguous because a medical license investigation does not prove the existence of any actual "fact" that could change his occupational status or financial stability. (Doc. #78, p. 19.) Dr. Liebowitz asserts that this question simply asked him to predict what will happen to his license, rather than to state an existing fact. (Id.)

The Court finds that this question is not ambiguous and does concern a fact, not a prediction. At the time Dr. Liebowitz filled out his Application, it was a fact that he was the subject of three active and pending DOH Complaints regarding the medical care he had provided to patients. The DOH Complaints sought revocation of Dr. Liebowitz's license, which would preclude him from practicing medicine, his career of nearly 30 years. Dr. Liebowitz conceded during his deposition that if the DOH found him guilty his license could be revoked, and that the DOH had been seeking to have his medical license revoked. (Doc. #80, ¶¶ 29, 36.) Nothing in the question called upon the applicant to evaluate the merits of the DOH Complaints or predict their success. As Dr. Liebowitz knew, the investigation of the DOH was pending and "could" change both his occupational status and his financial stability. An

objectively reasonable person in Dr. Liebowitz's situation could only truthfully answer Question 5(i) in the affirmative because, as Dr. Liebowitz knew, the DOH proceedings were in fact pending and could change his occupational status and financial stability.

### (b) Question 17

Question 17 asked, "Have you EVER had a professional license suspended, revoked, or is such license under review or have you ever been disbarred?"  (Doc. #58-1, p. 22.)  Dr. Liebowitz answered, "No."  (Id.)  Dr. Liebowitz argues that the "under review" portion is ambiguous because "under review," "in the context of an administrative proceeding to discipline a professional license holder," "really has no meaning." (Doc. #78, p. 24.)[5]

The Court finds that this question is not ambiguous and does concern a fact.  The pertinent portion of the question asks whether Dr. Liebowitz's professional license is "under review."  Dr. Liebowitz's pending and active DOH proceedings included review of the medical care he had provided and sought revocation of his medical license, among other punishments.  Dr. Liebowitz had two attorneys reviewing his case and a proposed settlement had been offered.  Dr. Liebowitz was actively aware of and participating in

---

[5] Dr. Liebowitz supported this argument with expert testimony. That expert evidence was excluded by Court Order.  (Doc. #94).

the proceedings.  His medical license was clearly "under review" at the time of the Application.  Under these circumstances, an objectively reasonable person in Dr. Liebowitz's situation could only truthfully answer Question 17 in the affirmative.

Therefore, the Court finds that the material undisputed evidence shows that Dr. Liebowitz made false statements concerning material facts when answering these two unambiguous Application questions.  MetLife has satisfied the first fraud element.  Dr. Liebowitz's request for summary judgment based on ambiguous questions (Doc. #78, pp. 17-25) is denied.

### (2) Knowledge of Falsity

MetLife must next establish that the material undisputed facts show Dr. Liebowitz's knowledge that the representations were false.  Butler, 44 So. 3d at 105.  MetLife has done so.

Dr. Liebowitz argues that he answered the questions "to the best of his knowledge and belief," suggesting he did not knowingly answer falsely.  (E.g., Doc. #78, p. 18-19; Doc. #91, p. 6-7.) However, Dr. Liebowitz's "belief" in the truthfulness of his answers cannot contradict actual knowledge:

> The twin qualifiers of knowledge and belief
> require that knowledge not defy belief.  What
> the applicant in fact believed to be true is
> the determining factor in judging the truth or
> falsity of his answer, but only so far as that
> belief is not clearly contradicted by the
> factual knowledge on which it is based.  In
> such event, a court may properly find a
> statement false as a matter of law, however

16

> sincerely it may be believed.  To conclude
> otherwise would be to place insurance
> companies at the mercy of those capable of the
> most invincible self-deception — persons who
> having witnessed the Apollo landings, still
> believe the moon is made of cheese.

Casamassina v. U.S. Life Ins. Co. in City of New York, 958 So. 2d 1093, 1101 (Fla. 4th DCA 2007) (quoting Sands, 912 F.2d at 1365).

It is undisputed that Dr. Liebowitz knew of the DOH Complaints and the investigation at the time he completed the Application. Dr. Liebowitz admits this knowledge.  The Court has also found that the answer to each question was a false statement of fact. MetLife has satisfied the second fraud element.

### (3)  Intent to Induce Reliance

MetLife must next demonstrate that Dr. Liebowitz had the intent to deceive MetLife into providing disability insurance coverage.  Butler, 44 So. 3d at 105.  "A false statement in the abstract, even if knowingly made, does not constitute fraud; indeed, what makes a false statement fraudulent is the declarant's intent that others rely upon it." Philip Morris USA Inc. v. Principe, No. 3D20-875, 2021 WL 4302370, at *6 (Fla. 3d DCA Sept. 22, 2021) (citing Butler, 44 So. 3d at 105).  This element is often established by circumstantial evidence.  Glob. Quest, LLC v. Horizon Yachts, Inc., 849 F.3d 1022, 1030 (11th Cir. 2017) (citations omitted) ("elements of fraud—particularly intent and

knowledge—may be, and often are, proven by circumstantial evidence").

MetLife characterizes the evidence of intent in this case as "overwhelming." (Doc. #80, pp. 20-22.) MetLife cites circumstantial evidence, including the pending and active DOH Complaints, the timing of settlement negotiations of those DOH Complaints, and Dr. Liebowitz's actions at that time. (Doc. #80.) Conversely, Dr. Liebowitz consistently maintains he believed his answers to be truthful and had he no intent to induce MetLife to provide him coverage through false statements, citing his own declaration in support. (Doc. #74-1.) Dr. Liebowitz's Second and Third Affirmative Defenses also assert that Dr. Liebowitz answered the Application questions based on his "reasonable interpretation" of the questions, indicating he had no intent to deceive MetLife. (Doc. #58, pp. 5-7.)

In fraud cases, summary judgment "is rarely proper as the issue so frequently turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge." Glob. Quest, 849 F.3d at 1029. When viewing the evidence in light most favorable to Dr. Liebowitz as the nonmoving party on MetLife's motion, a reasonable factfinder could determine that Dr. Liebowitz lacked the intent to induce MetLife's reliance when falsely answering the Application

18

questions.[6]  Travelers Cas. & Sur. Co., 2014 WL 5325745, at *6 ("If this Court finds the questions unambiguous, the question of whether [the applicant] gave his responses with the intent to deceive must be decided by [the factfinder].")  A dispute of fact remains, and MetLife is not entitled to summary judgment on the third fraud element.

### (4)  Consequent Injury

Finally, MetLife must establish that the material undisputed facts prove that MetLife suffered a consequent injury when acting in reliance on Dr. Liebowitz's misrepresentations.  Butler, 44 So. 3d at 105.  This element is clearly established, since the uncontradicted evidence is that MetLife would not have issued the Policy if Dr. Liebowitz had disclosed the DOH Complaints and investigations.  MetLife has satisfied the fourth fraud element.

In sum, MetLife is entitled to partial summary judgment as to the first, second, and fourth components of its fraud claim, but not the third component.

---

[6] Although, the Court is the factfinder on the coverage issue, a district court should only grant summary judgment on cases slated for a bench trial "when there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony," because a "trial on the merits would reveal no additional data."  Fla. Int'l Univ. Bd., 830 F.3d at 1252. (quotation omitted).  At a minimum, there are clearly issues of Dr. Liebowitz's credibility to consider.

**B.    Promptness of Rescission**

Another element of MetLife's rescission claim, distinct from the fraud elements, is "[t]hat the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission." Billian, 710 So.2d at 991.  Dr. Liebowitz argues that MetLife cannot now actually rescind the Policy because MetLife did not seek to rescind the Policy with reasonable promptness.  (Doc. #89, pp. 7-16, 20.)  Therefore, according to Dr. Liebowitz, MetLife waived any right to rescind the Policy, MetLife's motion should be denied, and Dr. Liebowitz's motion is due to be granted.  (Id.)

As the Florida Supreme Court has stated:

> [W]hen an insurer has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof. While, ordinarily, the insurer is not deemed to have waived its rights unless it is shown that it has acted with the full knowledge of the facts, the intention to waive such rights may be inferred from a deliberate disregard of information sufficient to excite attention and call for inquiry as to the existence of facts by reason of which a forfeiture could be declared.

Johnson v. Life Ins. Co. of Ga., 52 So. 2d 813, 815 (Fla. 1951). "An insurer may impliedly waive its ability to rescind the policy and deny recovery, however, if the insurer knows or has reason to know of the misrepresentation but continues to accept premium

payments or otherwise lead the insured to believe that he or she is still covered under the policy." Girard v. Mid-W. Nat'l Life Ins. Co. of Tennessee, No. 05-61506-CIV, 2005 WL 8155381, at *4 (S.D. Fla. Dec. 7, 2005).  On the other hand, "[a]n insurer may take a reasonable amount of time to investigate the facts justifying rescission, though." Girard, 2005 WL 8155381, at *3.

MetLife first argues that Dr. Liebowitz cannot argue that MetLife's lack of promptness constituted waiver because Dr. Liebowitz did not plead waiver as an affirmative defense.  (Doc. #93, pp. 4-5.)  But Dr. Liebowitz was not required to do so.  E.g., Barber v. Am.'s Wholesale Lender, 542 F. App'x 832, 836 (11th Cir. 2013) (citing Rosique v. Windley Cove, Ltd., 542 So.2d 1014, 1016 (Fla. 3d DCA 1989)) ("The better view of Florida law is that plaintiffs must affirmatively allege in their complaint that they rejected the contract in a 'reasonably prompt fashion' after discovering a mistake.").  MetLife's promptness is part of MetLife's cause of action, which the Court has already found was sufficiently pled in the Complaint (Doc. #59 at 4-5) and which Dr. Liebowitz denied in his Answer (Doc. #58).  This is sufficient to raise the issue of waiver.

Turning to the merits of Dr. Liebowitz's waiver argument, it is undisputed that: (1) Dr. Liebowitz submitted his disability claim in late December 2018 asserting a disability that began on

January 4, 2016;[7] and (2) MetLife provided notice of its rescission on December 30, 2019.  (Doc. #80, ¶ 43; Doc. #97, ¶ 9(21).)

Dr. Liebowitz argues that MetLife unreasonably delayed rescission for over a year with knowledge of the DOH Complaints, and therefore MetLife waived any ability to rescind.  (Doc. #89, pp. 7-16.)  In support of this argument, Dr. Liebowitz states that as early as November 29, 2018, Theresa Woods, a MetLife claims specialist and the original handler of his disability claim, searched public licensing records which disclosed the DOH Complaints.  (Doc. #86-2, pp. 6-8; Doc. #87-3.)  On December 28, 2018, Woods conducted a similar search, printing a record disclosing the DOH complaints.  (Doc. #87-7.)  Woods did not share this information with anyone else at MetLife, and between November 2018 and May 2019, she never inquired about the DOH Complaints or Dr. Liebowitz's answers to the Application questions while investigating his claim.  (Doc. #89, pp. 10-11.)

MetLife responds that the circumstances surrounding rescission made the timing reasonable, and that it rescinded the Policy once it was in possession of all material facts to justify the rescission.  (Doc. #93, p. 6.)  MetLife cites Woods' testimony that she did not recall the application questions, and that Woods was focused on collecting Dr. Liebowitz's medical records given

---

[7] See footnote 2.

his December 2018 disability claim for a January 2016 injury. (Id.) MetLife also states that in June 2019, Jamie Frederick, a senior claims advisor, took over Dr. Liebowitz's claim. (Id. p. 7.) MetLife then details Frederick's review of the DOH Complaints, including communications with the DOH, communications with Dr. Liebowitz, the refusal of premiums in November 2019, and the ultimate approval of rescission by the claims director. (Id.) MetLife argues that, under these circumstances, the time it took to investigate Dr. Liebowitz's back-dated disability claim and his Application before rescinding the Policy was reasonable.

Based on the foregoing, there are disputed issues of material fact concerning the promptness of MetLife's rescission. Woods' knowledge of the DOH Complaints for a year prior to rescission may or may not render the rescission untimely. E. Portland Cement Corp. v. F.L. Smidth Inc., 2009 WL 3010820, *6 (M.D. Fla. Sept. 16, 2009) ("whether the delay was reasonable is a question of fact that precludes summary judgment on the issue of rescission"). Accordingly, the reasonable promptness of MetLife's rescission remains a triable matter on the coverage issue.

## C.  Affirmative Defenses

While partial summary judgment for MetLife is appropriate on certain fraud elements of MetLife's rescission claim, as discussed supra, Dr. Liebowitz has asserted affirmative defenses which could preclude MetLife from prevailing.  MetLife moves for summary

judgment on all affirmative defenses, so the Court discusses each in turn.  (Doc. #80, pp. 22-27.)

### (1)  Failure to State Claim

The First Affirmative Defense asserts that MetLife's Complaint fails to state a cause of action upon which relief may be granted.  (Doc. #58, p. 4.)  The Court has twice rejected this argument (Docs. #54, 59), and does so again.  Partial judgment will be entered against Dr. Liebowitz and in favor of MetLife as to the First Affirmative Defense because MetLife has stated a cause of action upon which relief may be granted.

### (2) and (3) Answering Ambiguous Questions

Dr. Liebowitz's Second and Third Affirmative Defenses assert that the Application questions were ambiguous and that Dr. Liebowitz cannot be found to have made misstatements on his Application because he answered the questions based on his reasonable interpretation of the questions.  (Doc. #58, pp. 5-7.)  As discussed supra, the Court finds that the questions are not ambiguous.  However, a question of fact remains as to Dr. Liebowitz's intent.  The Second and Third Affirmative Defenses remain to the extent these defenses argue Dr. Liebowitz's intent to induce reliance through fraudulent misstatements.

### (4) and (5) Non-Conforming Policy Language

Dr. Liebowitz's Fourth and Fifth Affirmative Defenses assert that language in the Policy fails to conform with mandatory Florida

law, which requires that the Policy be modified in such a way which precludes rescission. (Doc. #58, pp. 7-8; <u>see also</u> Doc. #78, pp. 12-15.)  This argument is also asserted as part of Dr. Liebowitz's Counterclaim Count I and his motion for summary judgment.  (Doc. #58, p. 16; Doc. #78, pp. 12-15.)

Florida law requires that certain language be contained in insurance policies in Florida.  One such requirement, pertinent to this litigation, is Fla. Stat. § 627.607(1), which requires the following provision:

> "Time Limit on Certain Defenses: After 2 years **from the issue date**, only fraudulent misstatements in the application may be used to void the policy or deny any claim for loss incurred or disability starting after the 2-year period."

Fla. Stat. § 627.607(1) (emphasis added.)  However, Florida law then provides alternative language, which may be substituted by the insurer:

> (2) A policy may, in place of the provision set forth in subsection (1), include the following provision:
>
> "Incontestable:
>
> (a) Misstatements in the Application: After this policy **has been in force** for 2 years during the insured's lifetime (excluding any period during which the insured is disabled), the insurer cannot contest the statements in the application.
>
> (b) Preexisting Conditions: No claim for loss incurred or disability starting after 2 years from the issue date will be reduced or denied because a sickness or physical condition, not

> excluded by name or specific description
> before the date of loss, had existed before
> the effective date of coverage."

Fla. Stat. § 627.607(2) (emphasis added).  The actual Policy

language provides as follows:

> "Time Limit on Certain Defenses: After two
> years **from the Effective Date** of this policy,
> or any policy change or reinstatement, no
> misstatement, except fraudulent
> misstatements, made by You on the Application
> can be used to void this policy or such policy
> change or reinstatement, or to deny a claim
> under this policy or the policy change or
> reinstatement, for a Disability starting after
> the end of such two-year period."

(Doc. #58-1, p. 13) (emphasis added).

Dr. Liebowitz argues that the Policy language fails to match

the mandatory statutory language because the Policy provision

measures the two-year period from the "effective date" of the

Policy instead of the "issue date." (Doc. #78, pp. 12-15.)  Dr.

Liebowitz contends that this deviation requires the current Policy

provision to be stricken and the language of § 627.607(2) to be

imported into the Policy.

The Court agrees that the "effective date" and "issue date"

are not necessarily the same.  For example, the "effective date"

as defined by the Policy is March 6, 2015, while the "issue date"

is not defined in the Policy but could arguably be as late as May

3, 2015 when the Policy was delivered to Dr. Liebowitz.  But the

Florida legislature has provided a remedy for such a situation,

which does not include striking one provision and importing other language.  A Florida statute provides:

> The contract may include the following provision:
>
> "Conformity with State Statutes: Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the insured resides on such date is hereby amended to conform to the minimum requirements of such statutes."

Fla. Stat. § 627.627.  The Policy expressly includes this provision, stating:

> Any provision in this policy which, on the Effective Date, conflicts with the laws of the state in which You reside on that date is amended to meet the minimum requirements of such laws.

(Doc. #58-1, p. 13.).  <u>See also</u> Fla. Stat. § 627.418 (an otherwise valid policy not in compliance with the requirements of the code is not invalid but shall be construed and applied as if in full compliance).

Thus, the Policy is deemed to include the two-year provision required by Florida statute, and does not have non-conforming provisions.  Dr. Liebowitz's request for summary judgment (Doc. #78, pp. 12-15) based on the Policy's nonconforming language is denied.  MetLife is also entitled to partial judgment as to the Fourth and Fifth Affirmative Defenses.

### (6) and (7) Equitable Estoppel

Dr. Liebowitz's Sixth and Seventh Affirmative Defenses assert two theories of equitable estoppel.  The Sixth Affirmative Defense argues that MetLife cannot rescind the Policy because the insurance agent who assisted Dr. Liebowitz with his application was allegedly employed by MetLife and did not advise him to disclose the DOH Complaints.  (Doc. #58, p. 8.)  MetLife seeks judgment on this defense because Dr. Liebowitz's own deposition testimony made clear that the insurance agent that helped him did not work for MetLife.  (Doc. #80, p. 25 n.8.)

The Seventh Affirmative Defense argues that MetLife cannot rescind the Policy based on a fraud standard because MetLife's rescission letter did not put Dr. Liebowitz on notice of his alleged fraud.  (Doc. #58, p. 8.)  MetLife seeks judgment on this defense because the rescission letter quoted the "Time Limit on Certain Defenses" provision, which clearly details fraudulent misstatements.  (Doc. #80, p. 25.)

Dr. Liebowitz's Response does not dispute or otherwise counter MetLife's facts or arguments, abandoning these affirmatives defenses.  (See Doc. #89.)  E.g., Haasbroek v. Princess Cruise Lines, Ltd., 286 F. Supp. 3d 1352, 1358 n.4 (S.D. Fla. 2017) ("When a party fails to address a specific claim, or fails to respond to an argument made by the opposing party, the Court deems such claim or argument abandoned.")  In any event,

there are no issues of disputed material facts which would prevent summary judgment in MetLife's favor.   MetLife is entitled to partial judgment as to the Sixth and Seventh Affirmative Defenses.

### (8) Statute of Limitations

Dr. Liebowitz's Eighth (and final) Affirmative Defense asserts that MetLife's rescission based on fraud is barred by the applicable Florida statute of limitations.   MetLife moves for summary judgment on this defense.   (Doc. #80, p. 25.)   Dr. Liebowitz also moves for summary judgment based on the statute of limitations.   (Doc. #78, pp. 15-17.)

Both parties agree that the applicable statute of limitations for MetLife's rescission claim is four years because MetLife's claim is based in fraud.   See Fla. Stat. § 95.11(3)(j).   (Doc. #78, p. 15; Doc. #90, p. 13.)   But the parties disagree on when MetLife's claim accrued and whether the claim is time-barred. MetLife asserts that its claim accrued in December 2018, after Dr. Liebowitz submitted his disability claim.   (Doc. #90, pp. 13-14.) Dr. Liebowitz asserts that MetLife's claim accrued at the time of his Application and the Policy's issuance (between March and May 2015) because: (1) MetLife could have, with due diligence, discovered the misstatements in the Application in 2015; and (2) MetLife did not plead delayed discovery.   (Doc. #78, p. 16; Doc. #89, pp. 16-20; Doc. #91, pp. 5-6.)

Under Florida law, the statute of limitations begins to run when the cause of action accrues. Hearndon v. Graham, 767 So. 2d 1179, 1185 (Fla. 2000). Generally, a cause of action accrues, and the statute of limitations therefore begins to run, on the date the last element constituting the cause of action occurs. Id. at 1184–85 (citing Fla. Stat. § 95.031). In fraud claims, however, the "delayed discovery rule" may postpone the running of the statute of limitations until "the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(a). As a general rule, an insurer is entitled to rely on statements in an application and does not need to search public records to verify them. Indep. Fire Ins. Co. v. Arvidson, 604 So. 2d 854, 856 (Fla. 4th DCA 1992)) ("[a]n insurer is entitled to rely upon the accuracy of the information in an application, and has no duty to make additional inquiry"); Nembhard v. Universal Prop. & Cas. Ins. Co., No. 3D20-1383, 2021 WL 3640525, at *3 (Fla. 3d DCA Aug. 18, 2021) (citations omitted) ("An insurance company has the right to rely on an applicant's representations in an application for insurance and is under no duty to inquire further, unless it has actual or constructive knowledge that such representations are incorrect or untrue.").

The record establishes the following chronology:

- January 30, 2015:  Dr. Liebowitz signs the Application. (Doc. #97, ¶ 9(1).)

- April 16 – May 3, 2015:  The Policy issues with an effective date of March 6, 2015.  (Id. ¶ 9(4).)

- May 3, 2015: MetLife delivers the Policy to Dr. Liebowitz.  Dr. Liebowitz signs an Amendment to the Application, affirming "[t]here are no facts or circumstances which would require a change in the answers in the application."  (Id. ¶ 9(7).)  MetLife undertakes no further investigation into Dr. Liebowitz or his Application.  (Id. ¶ 9(8).)

- September 18, 2018: MetLife mails a claims form to Dr. Liebowitz.  (Doc. #87-1.)

- November 15, 2018: MetLife mails a second letter to Dr. Liebowitz asking whether he intends to follow through with his disability claim.  (Doc. #87-2.)

- November 29, 2018: Woods accesses the DOH website and prints Dr. Liebowitz's medical licensing information. (Doc. #87-3.)

- December 18, 2018:  Dr. Liebowitz files his initial claims forms for benefits. (Doc. #80, ¶43.)

- December 28, 2018: Woods prints additional information from the DOH website concerning Dr. Liebowitz's medical licensing.  (Docs. ## 87-6, 87-7.)

- December 2018 – December 2019: MetLife investigates Dr. Liebowitz's disability claim.

- December 30, 2019:  MetLife sends Dr. Liebowitz a Notice of Rescission.  (Doc. #97, ¶9(21).)

- April 15, 2020:  MetLife files federal lawsuit.  (Doc. #1.)

Based on this record, MetLife's rescission claim accrued, at the earliest, on November 29, 2018, when Woods reviewed the DOH website and arguably could have, with due diligence, discovered

the DOH Complaints.  The record contains no evidence to suggest that MetLife had actual or constructive knowledge that the Application statements were false, and so MetLife was entitled to rely on Dr. Liebowitz's statements in his Application without any additional inquiry.  MetLife's April 15, 2020 complaint was timely.

Dr. Liebowitz's argument that MetLife was required to affirmatively plead delayed discovery also fails.  The statute of limitations is an affirmative defense, and MetLife need not have negated it in its Complaint, La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004), nor have filed a reply.  Fed. R. Civ. P. 12(a)(1)(C); Miller v. Abercrombie & Kent, Inc., No. 08-61471-CIV, 2009 WL 259672, at *1 (S.D. Fla. Feb. 4, 2009) (no requirement in federal pleading that a reply to affirmative defenses be filed).  Dr. Liebowitz motion for summary judgment based on the statute of limitations is denied.  (Doc. #78, pp. 15-17.)  MetLife is entitled to partial judgment as to the Eighth Affirmative Defense.

**D.  Summary**

The Court denies Dr. Liebowitz's motion for summary judgment in its entirety.  As to MetLife's motion, the Court grants partial summary judgment in favor of MetLife on the first, second, and fourth components of the fraud elements of MetLife's rescission claim.  The Court also enters partial summary judgment in favor of

MetLife on the First, Fourth, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses.

Pursuant to Fed. R. Civ. P. 56(g), the Court finds that the following material facts are not genuinely in dispute and will treat them as established for the coverage determination in this case:

1.   Dr. Liebowitz made false statements concerning material facts when answering Questions 5(i) and 17 in the Application.

2.   Dr. Liebowitz knew the representations he made when answering Questions 5(i) and 17 in the Application were false.

3.   MetLife was consequently injured when acting in reliance of Dr. Liebowitz's misrepresentations.

4.   The Policy includes the provision set forth in Fla. Stat. § 627.607(1).

5.   Dr. Liebowitz was not assisted by a MetLife insurance agent when filling out the Application.

6.   MetLife put Dr. Liebowitz on notice of its intent to rescind the Policy based on Dr. Liebowitz's alleged fraud.

7.   MetLife relied on the statements made by Dr. Liebowitz in his Application in 2015 and did not investigate his answers until after Dr. Liebowitz filed his claim.

   **E.   Motion for Entry of Judgement**

As a final matter, also pending before the Court is Dr. Liebowitz's Motion for Entry of Judgment Under Rule 54(b) Following

Entry of Partial Summary Judgment (Doc. #95), filed on October 27, 2021. In this motion, Dr. Liebowitz assumes he will prevail on the coverage issue following these cross motions for summary judgment, and requests the Court enter judgment in his favor. Since this did not happen, the motion is denied.

Accordingly, it is now

**ORDERED:**

1.  Dr. Liebowitz's motion for summary judgment (Doc. #78) is **DENIED.**

2.  MetLife's motion for summary judgment (Doc. #80) is **DENIED IN PART AND GRANTED IN PART,** as set forth above.

3.  Dr. Liebowitz's motion for entry of judgment under Rule 54(b) (Doc. #95) is **DENIED.**

4.  The Clerk shall withhold entry of partial summary judgment until further order by the Court.

5.  The Court will schedule a bench trial on the remaining coverage issues in a separate order.

**DONE and ORDERED** at Fort Myers, Florida, this ___11th___ day of January, 2022.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

34